Milligan, J.,
delivered the opinion of the Court.
The plaintiff in error was indicted, in the Circuit Court of Greene County, under the Statute, for the burning of “a certain house or out-house,” the propery of George Kenney. He was twice tried, and twice convicted, as charged in the indictment, by a jury of Greene County. A new trial was granted on the first conviction; and on the second, motions for a new trial and in arrest of judgment, were entered and successively overruled, and the plaintiff in error sentenced to the Penitentiary for the period of fifteen years; from which he has prosecuted an appeal in error, to this Court.
The facts of this case are plain and simple, involving the consideration of the weight to be given to the testimony of the principal witness on the part of the State, and the connection of the accused with the burning, as well as his criminal responsibility under the circumstances of this case.
The proof shows that the dwelling house, smoke house and milk house of the prosecutor, were burned on the 4th of August, 1864, by a party of rebel soldiers, under the command of Colonel Alston. The late war, at the time of the burning, was flagrant, and neither the one or the other of the contending parties had any permanent occupation of the country in which the house was located. The military forces of both parties occasionally passed through it; and, at the time of the *177 burning, tbe command of Colonel Alston was passing by tbe bouse, and after tbe main body of bis force bad gone beyond it, be was informed by a courier, that bis rear guard bad been fired on from tbe bouse; whereupon be baited tbe command, and detailed from it ten or fifteen men, and ordered them back, with instructions to burn the bouse, which they promptly executed.
Admitting, for the present, tbe criminal responsibility of tbe act, it is insisted that tbe plaintiff in error bad no participation in it. His connection with it, rests alone upon tbe uncorroborated testimony of one Henry Linebaugb, who was examined on tbe part of the State. He states, in substance, that, at tbe time of tbe burning, be was a prisoner, and in the custody of Alston’s command. As they passed tbe bouse it was still standing, and after they bad gone beyond it about two or three miles, at Wright’s meadow, on the road leading to Rogersville, some soldiers came up and said they bad been fired upon in tbe gap, from Kenney’s bouse, and a detail was ordered to go back and burn tbe house. There was a crowd present at tbe time, and he states that be remembers some of tbe names called as a detail to burn tbe bouse, and others be does not recollect. Among those called, be remembered tbe names of Foster White-side, John Harris, Brabson, Bishop, Charles Inman and Capt. Ross.
On cross-examination, be further states that tbe detail was ordered by Alston, and the names of tbe party written down on a piece of paper, and tbe detail called out from a large crowd. He was at that time, within six or eight feet of tbe party detailed; and when their *178 names were called over, the men stepped out; but he cannot say that Whiteside was one of them, or that he answered to his name. They were mounted, and when they went back, the detail was between the witness, Linebaugh, and his fellow-prisoner, Henry Carter.
Soon after this, as the witness further states, the command moved on to the town of Rogersville, some twelve miles from the prosecutor’s house, when he and Carter were placed in jail, and the next morning brought out, tried and delivered over to the plaintiff in error, one Tipton, and other rebel soldiers, who marched them on foot up the road, in the direction of Kingsport and Bristol. Carter and Linebaugh, as it appears, were tied together, and on the way, at a point known as the “Yellow Store,” they were untied and placed on horseback. Linebaugh states: “Whiteside rode by my side from there to Kingsport; I inquired of him if the house was really burned? He said yes — that he helped to guard it while it was burning, and until it was so fully on fire that it could not be put out.
On the evidence of this witness, the verdict rests, and upon it the judgment of the Court must stand or fall; for the other facts and circumstances in the case, tend rather to weaken, than to strengthen it.
The charge of the Court is not specially excepted to, nor, indeed, do we think it can be justly assailed, at least by the plaintiff in error, except so far only, as it assumes to speak of the testimony of Linebaugh, as detailing the “confessions” of the accused.
There is a marked difference in the weight that is to be given to deliberate confessions of guilt, and mere *179 extra-judicial and casual conversations, with reference to the party’s guilt. The former, if freely and voluntarily made, without the influence of hope or fear, in any degree, are generally received as among the most effectual proof in the law. But their value depends on the supposition that they are deliberate and voluntary, and the presumption that a rational being will not make admissions prejudicial to his interest and safety, unless when urged by the promptings of truth and conscience: 1 Greenleaf’s Ev., sec. 215; also, Deathridge vs. The State, 1 Sneed, 75; while the latter is the weakest and most unsatisfactory of all evidence. Such words are often spoken without serious intention, and they are always liable to he mistaken and mis-remembered, and their meaning is liable to be misunderstood and exaggerated: Starkie on Ev., 225, margin; 1 Greenleaf’s Ev., sec. 214. The motives that prompt free and voluntary confessions of guilt, and those which superinduce mere extra-judicial and casual conversation, are wholly different. The one is the promptings of truth and conscience, while the other has no such solemn sanctity, and may spring from an almost endless variety of motives. Hence, it is often important, in criminal cases, to draw the distinction between solemn confessions of guilt, freely and voluntarily made, and mere casual and ■extra-judicial conversations.
In this case, there can be no doubt as to the true character of the declaration of the plaintiff in error, as detailed by the witness, Linebaugh. The whole conversation, which must be taken together, is conclusive on this point. The witness, after detailing the admissions *180 of tlie accused, as before set out, proceeds : “They asked who was at the house? Some one described an old lady and a young lady as being there, and I said, neither of them was Kenney’s wife. Some one asked where Kenney was? and I said I did not know. Tip-ton said Kenney was a Union man and a ‘bushwhacker’ or he would have been at home.”
Erom this part of the same conversation of the plaintiff in error, in which his “solemn confession,” so-called, occurred, it is perfectly apparent that the whole was a casual conversation, in which all the party participated — some who joined in it were evidently unknown to the witness — and the whole, when taken together, leaves no doubt resting- on the mind that it was a mere extra judicial and casual conversation, which is the weakest and most unsatisfactory of all evidence: The State vs. Fields, Peck’s R., 140-1: 1 Greenleafs Ev., sec. 217.
Coupled with the inherent weakness of this class of evidence the character of the witness, Linebaugh, is not only impeached, but he is contradicted by the other-witnesses in the case. True, his character for veracity is sustained by a greater number of witnesses than those who impeach it; but this does not present him before the jury in the light of an unimpeached witness. “ The fact that he is assailed by a single witness,” says Judge Turley, in the case of Kinchelow vs. The State, 5 Hum., 9, “casts a reproach upon the evidence; and it then becomes a question to be decided upon by the jury, like all other questions of fact, and is to be judged of, not by the number of witnesses, but by *181 their respectability and intelligence, consistency and means of information.
The witness, Carter, who was Linebaugh’s fellow-prisoner, was present with him at the time the detail to burn the house was ordered, and also accompanied them under arrest, as has been shown, from Rogersville to Kingsport. He does not materially corroborate his statement, but contradicts it in several important particulars.
Linebaugh states that he was, at the time the detail was made to burn the house, within six or eight feet of them, and the detailed men were between him and Carter. Carter says he was talking with Colonel Alston when the rear guard came up and reported the firing. Alston ordered the detail, and Linebaugh was about one hundred yards off at that time. The detailed men started from around Alston, and none of them were between witness and Linebaugh. He heard no roll call, nor did he ever see the plaintiff in error until he saw him the next day at Rogersville.
Linebaugh, as it appears, did not recognize White-side on the next day, when he was placed under his charge as a prisoner; and on the way to Kingsport, as Carter proves, while he and Linebaugh were tied together, the latter asked Whiteside’s name, and inquired after his relatives. Carter heard the soldiers who were guarding them talking of the burning, but did not hear Whiteside say anything about it.
Superadded to all this, the witnesses, Alston, Hunt, and Williams, prove positively, that Whiteside was not one of the men detailed to burn the house; and Ross, *182 Watkins and Hale, that be was in Rogersville, twelve miles off, on the day upon which it was burned. These witnesses are unimpeached, and we are bound to give due weight to their testimony.
It follows, therefore, upon a careful review of all the facts and circumstances in this case, without attempting to burden this opinion with further details, that, in our opinion, there is not only a decided preponderance of testimony against the verdict of the jury, but there is really nothing to sustain it, unless we discard all the testimony of the witnesses for the defense. This we are not authorized to do. The witnesses are unim-peached, and their intelligence and means of information are equal, if not indeed superior, to the witness Line-baugh; and we are not at liberty, in scrutinizing the facts of this case, to disregard their evidence.
Added to the total want of testimony to sustain the verdict in this case, it is insisted that the Court erred in not arresting the judgment.
The indictment charges the plaintiff in error with feloniously, willfully and maliciously burning “a certain house, or out-house, of one Creorge Kenney.” The offense is charged in the words of the Statute—Code, sec. 4666; and while it is admitted that the preferable mode of setting forth offenses created or defined by Statute, is to follow the words of the Statute, it is insisted that this indictment includes two separate and distinct offenses in the same count.
It is clear, to burn the house of another is arson; so also, is it arson to burn an out-house.
*183 An indictment can be maintained for either offense, notwithstanding both are punished by the same degree of punishment. The Legislature never intended to make the burning of “the house, or out-house,” of another, one offense, any more than they intended, in the succeeding sections of the Code, to declare the burning of “ any house, barn, stable, or other valuable building,” constituted but a simple offense. The crime is complete when either “ the house, or out-house of another,” is willfully and maliciously burned, or when any one willfully or maliciously burns or sets fire to either a house, barn, stable, or other valuable building. The words “ house, or out-house,” employed in the Statute, are not synonymous words, and were not intended by the Legislature so to be 'treated. The phrase is in the disjunctive, and must be held to create separate offenses. It follows, therefore, that the charge in the indictment, being in the alternative, by all the authorities, is bad, and may be taken advantage of by motion in arrest of judgment: 1 Archibald’s Crim. Prac. and Plead., 91, mar. and note 1; also, 88, mar., note 1.
This would be otherwise were the offenses charged in the indictment contained in different counts. But in this case, they are in the same count, and are, therefore, wanting in certainty. Certainty and precision in the description of offenses are essential to all indictments, that the defendant may know whether the averments constitute an indictable offense, and how to plead and prepare for his defense, and that the judgment to be given in connection may be manifest, and a protection to him *184 against all subsequent accusations for the same crime: Peek vs. The State, 2 Hum., 84.
Various other questions of much interest have been raised and elaborately discussed in this case, which, with the view we have taken of it, are not necessary now to be decided.
The judgment of the Circuit Court must be arrested, and the prisoner discharged.